Plaintiff's son, a minor sixteen years of age, sustained personal injuries on May 14th, 1945, when his "motorbike" collided with a taxicab at the intersection of North Alexander Street and Orleans Avenue in the city of New Orleans. Charging that the accident resulted from the negligence of the cabdriver; in that he recklessly drove his cab into the intersection without stopping in obedience to a stop sign situated on the lower corner of Orleans Avenue and in that he failed to maintain a proper lookout and to yield the right of way to his son, plaintiff brought this suit against Ody C. Nicks, the cabdriver, United Cab Company, his employer, and Cooperative Cab Company, which had deposited a bond with the Commissioner of Public Safety of New Orleans for the protection of the public against the negligent operation of cabs owned and operated by United Cab Company, claiming $287.75 damages on his own account and $2175 damages for the benefit of his son.
Defendants denied negligence on the part of the cabdriver and averred that the accident was due to the fault of plaintiff's son in that he failed to keep a proper lookout for traffic on Orleans Avenue or to give warning of his approach, despite the fact that he was driving at a dangerous and excessive rate of speed. Defendants further pleaded in the alternative that, if it be determined that the cabdriver was at fault in any particular, then recovery was nevertheless barred because plaintiff's son was guilty of contributory negligence.
After a trial on the foregoing issues, there was judgment in favor of plaintiff against defendants, Nicks and the Cooperative Cab Company, in solido, for $212.75 for his own account and in the sum of $1121.29 for the use and benefit of his minor son. Those defendants have appealed from the adverse decision and plaintiff has answered the appeal, praying that the award given him in the court below be increased to the amounts claimed in the petition.
The accident occurred on a clear day (7:30 p.m. on May 14th 1945) on Orleans Avenue at its intersection with North Alexander Street. Orleans Avenue runs from the Mississippi River to City Park Avenue and, beginning at the Municipal Auditorium and extending to its intersection with Bayou St. John, it is a broad, double paved thoroughfare separated by a neutral ground and accommodates traffic to and from the business section of the city. At Bayou St. John, the Avenue connects with a wide drainage canal known as "Orleans Canal" which it parallels to its destination. In this section, the thoroughfare is paved on the downtown side only and the uptown side, or the roadway on the other side of Orleans Canal, is not sufficiently improved to be used by heavy traffic. Because of *Page 398 
this, traffic bound for the business section is permitted to travel upon the outbound roadway. Thus, the Avenue is really a two-way paved street from Bayou St. John to City Park Avenue running parallel with the Orleans Canal. However, it is quite wide, much used and may be regarded as one of the principal traffic arteries of New Orleans. It is intersected by numerous streets which cross it at right angles and bridges have been built over the Orleans Canal at these intersecting streets to accommodate crosstown traffic. North Alexander Street is one of the streets intersecting Orleans Avenue at right angles and it runs from Canal Street in the direction of City Park. It is a two-way paved street and, at its intersection with Orleans Avenue, there is a bridge with a paved roadway extending over the Orleans Canal for the use of traffic proceeding thereon. The paved portion of Orleans Avenue, at the corner of North Alexander Street, is thirty-six feet wide, whereas, North Alexander Street is about twenty-two feet in width. Due to the fact that buses of New Orleans Public Service, Inc. are routed from North Alexander Street into Orleans Avenue, traffic on North Alexander Street is given the right of way over traffic on Orleans Avenue at the intersection and signs have been erected at the corner of Orleans Avenue requiring traffic on the Avenue to stop before proceeding over the crossing.
On the day of the accident, the taxicab was being driven out Orleans Avenue towards City Park Avenue and plaintiff's son was riding his motorbike on North Alexander Street in the direction of City Park across the bridge over Orleans Canal. Motorbikes of this type have in recent years become popular with teen aged boys as a medium of transportation and their appearance on the roadways of New Orleans is now not uncommon. This vehicle may be described to be a bicycle, powered by a motorcycle engine, which is situated under the driver's seat. It weighs about 150 pounds, has a maximum speed of approximately thirty miles per hour and is quite maneuverable. However, it must be handled with considerable caution while being driven in traffic — for (according to the evidence of a Mr. Guidry, an alleged motorbike expert, who testified for the plaintiff) it cannot be stopped in less than forty feet when it is travelling at a speed of fifteen miles per hour.
An examination of the record discloses an utter variance of testimony with respect to the manner in which the accident occurred, that is, whether the cab sped into the crossing without stopping in obedience to law and crashed into the motorbike, which had already preempted the intersection (as claimed by plaintiff), or whether the cab, after stopping, was struck by the motorbike which suddenly came into the intersection while the cab was negotiating it (as defendants profess).
Plaintiff's theory of the case is supported mainly by the testimony of Miss Dorothy Hicks, a young lady twenty-two years of age, who was walking on the footpath of the bridge over the Orleans Canal and who was the only eyewitness to the accident appearing on his behalf. The evidence shows that plaintiff's son sustained a cerebral contusion as the result of the accident and the young man testified that he has no recollection whatever of the mishap or of his movements prior thereto. For this reason, his statement is of no value whatever in determining whether the accident occurred solely as a consequence of the negligence of the cabdriver. Hence, it follows that, since Miss Hicks is the only eyewitness testifying for plaintiff, the judgment in his favor must be based, for most part, upon the belief that her statement preponderates over the contrary evidence given by the cabdriver and his witness, Mr. Jack Moreheiser, who was a passenger in the taxicab and who testified respecting the movements of the cab prior to and at the time of the accident.
The substance of Miss Hicks' testimony is as follows: That she was walking on the pedestrian path of the bridge over Orleans Canal at the time of the accident; that, as she approached the paved roadway of Orleans Avenue, she noticed the taxicab travelling towards the crossing at a fast speed (which she estimates to be at least thirty miles per hour); that, at the time she first *Page 399 
saw the cab, it was a block and a half from the intersection of North Alexander Street; that, while it was thus proceeding at a reckless pace, she saw plaintiff's son driving the motorbike over the bridge at a speed of between fifteen and eighteen miles per hour; that the motorbike did not slow down but continued into the intersection at this speed; that the cabdriver did not slacken his fast rate of travel and made no effort whatever to stop in obedience to the traffic sign facing him; that, when she observed the two vehicles approaching the intersection, she immediately realized that an accident was imminent and that, when the motorbike had entered the intersection, the front end of the cab crashed into its right side causing plaintiff's son to be catapulted forward in the air, or towards the downtown curb of the Orleans Avenue roadway past the intersection, where his head struck the pavement. She further says that the cab did not stop at the point of impact' but continued on up Orleans Avenue and finally came to rest in front of a house located approximately 120 feet from the intersection. According to Miss Hicks' testimony, the impact occurred near the middle of the crossing but she says that the boy was hurled across and over the moving cab diagonally so that, when he fell to the pavement, his body was near the curbing on the downtown side of the Avenue at a point located at least ten or twelve feet from the upper side of the intersection.
The testimony of the cabdriver cannot be reconciled with the statement of Miss Hicks. He says that he was driving out Orleans Avenue for the purpose of delivering his passenger, Mr. Moreheiser, to an address on City Park Avenue; that, on the journey, he obeyed all traffic signals, was travelling at a moderate rate of speed, keeping a proper lookout and exercising all the care required of a prudent motorist; that he was well aware of the stop sign situated at the intersection and that, in obedience thereto, he brought his cab to a full stop, looked in both directions for traffic in the intersection and, upon making sure that the roadway was clear, proceeded forward in first speed over the crossing; that, after his cab had preempted the crossing, the motorbike suddenly appeared from his left and struck the left side of his front bumper and fender with such force that the rider was thrown forward in the air (towards the direction in which the bike had been travelling) across the front of the cab to the curb and out of the path of the cab; that, as soon as the impact occurred, he brought the cab to an immediate stop; that he started it forward again in order to get out of the way so that he could ascertain the results of the accident; that, when he started the cab after having previously stopped after the impact, he noticed that the motorbike, which had become entangled with the front end of his bumper, was retarding his progress; that he therefore stopped again and removed the vehicle from the front bumper of the cab and that he thereafter went back to where the boy was lying to ascertain whether the young man had suffered injuries.
The testimony of Moreheiser, the passenger in the cab, substantially supports the evidence of the cabdriver.
It is apparent, in view of the finding below, that the judge was convinced that the statement of Miss Hicks outweighed the testimony of the cabdriver and Moreheiser. Our own appraisal of the conflicting statements leaves us somewhat in doubt inasmuch as it appears to us that the evidence of the cabdriver and Moreheiser increases in weight when analyzed in connection with the physical facts of the case. An examination of the damage received by the motorbike (right leg guard bent towards the rear of the vehicle), the admitted forward course taken by the boy's body from the moment of impact and the place where his body was found (well past the intersection) are all factual circumstances indicating that the motorbike came into the intersection at an appreciable speed at a time when the cab had already preempted it and at a time when the cabdriver could no longer prevent a collision. Whereas, if the motorbike was struck in the manner described by Miss Hicks — that is, on its right side by the bumper of the cab at the moment it was passing in front of the cab, it seems quite probable that the heavy blow would have knocked the bike over on its left side; that the boy would have sustained severe *Page 400 
injuries to his legs and other parts of his body and that such an impact would not have caused his body to be hurled forward above and over the front of the cab propelling it to the pavement at a point well past the upper side of the crossing.
But be this as it may, we cannot say, by giving the defense testimony credit for its accord with the physical facts, that the District Judge was manifestly wrong in holding that the cabdriver was guilty of negligence — for it appears, from the driver's statement, that he is somewhat confused as to the number of stops he made (he says he made four stops from the time he reached the intersection until after the occurrence of the accident) and there are certain other inaccuracies in his testimony from which the judge might have well been convinced that the driver did not stop at the intersection and that he proceeded therein without exercising a proper lookout or without due regard for the rights of others. Hence, bearing in mind that the judge had the opportunity of seeing the witnesses and hearing them testify, we are unable to conclude that he was obviously wrong in his resolution respecting fault on the part of the cabdriver.
On the other hand, we are of the opinion that the Judge erred in not holding that plaintiff's son was guilty of fault which contributed to the accident. As stated above, plaintiff's case must stand or fall on an acceptance of Miss Hicks' testimony as the true account of the accident. Her statement, while convicting the cabdriver of gross neglect, makes it plain that plaintiff's son came into the intersection without exercising any lookout whatever at a time when he should have realized that the oncoming taxicab was not going to stop or that it was being driven at such a fast pace that it could not be stopped. Miss Hicks says that, as soon as she saw the taxicab coming at a fast speed and noticed plaintiff's son passing her on the bridge, she realized that an accident was imminent. Obviously, if plaintiff's son had been watchful, during his journey into Orleans Avenue or while he was traversing the bridge over the canal, he would have realized that it would have been foolhardy for him to attempt to negotiate the paved portion of Orleans Avenue with the speeding cab approaching. But he did not look — as Miss Hicks says he did not slacken his pace at any time.
It seems very clear from her testimony that the boy paid no attention at all to the conditions prevailing at the intersection. There was nothing to obstruct his view of the crossing, or of traffic approaching it, from the time he left the upper side (or unpaved portion) of Orleans Avenue, during his journey over that side and while he was proceeding over the bridge. Yet, apparently without looking into the paved portion of Orleans Avenue for oncoming traffic, he continued on without slackening the speed of his vehicle (15 to 18 miles per hour) before attempting to negotiate a much traversed roadway. And this, despite the fact that he must be charged with knowledge that his motorbike could not be brought to a stop, while being driven at fifteen miles per hour, in a shorter distance than forty feet. Of course, if this were a case where the injured party failed to look and it appeared that, if he had looked, the speed of the taxicab was such as to cause him to believe that it would obey the law and yield the right of way, the failure to look would not be regarded as negligence which had causal connection with the accident. See Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292. But such is not the situation here according to Miss Hicks — for her testimony shows that, if plaintiff's son had looked, he would have been immediately advised of the reckless speed at which the cab was travelling and that it could not be brought to a stop short of the crossing.
For the reasons assigned, the judgment appealed from is reversed and plaintiff's suit is dismissed at his costs.
Reversed. *Page 401